IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH

| | |
|---|---|
| NAYELI REYES ANDRADE,<br><br>Petitioner,<br><br>v.<br><br>MARKWAYNE MULLIN, in his official capacity as Secretary of the Department of Homeland Security; TODD LYONS, in his official capacity as Acting Director of Immigration and Customs Enforcement (ICE); MICHAEL BERNACKE, in his official capacity as the Field Director of the Salt Lake City, Utah ICE Enforcement and Removal Operations; U.S. DEPARTMENT OF HOMELAND SECURITY; TODD BLANCHE, in his official capacity as the United States Attorney General; The Executive Office for Immigration Review.<br><br>Respondents. | MEMORANDUM DECISION AND ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS<br><br>Case No. 2:26-cv-00805-JNP<br><br>Chief District Judge Jill N. Parrish |

Before this court is Petitioner Nayeli Reyes Andrade's petition for a writ of habeas corpus under 28 U.S.C. § 2241, in which she also seeks injunctive and declaratory relief. ECF No. 1. For the following reasons, the court GRANTS the petition for a writ of habeas corpus but DENIES Ms. Andrade's requests for injunctive and declaratory relief.

## BACKGROUND

Ms. Andrade is a citizen of Mexico but has resided in the United States for at least 20 years. ECF No. 1, p. 2. She entered the United States "without inspection." *Id*. at 3. Ms. Andrade has five

United States citizen children, all under 21 years of age. *Id*. at 2. Her daughter, Karen Gamboa, is active duty military and submitted an application to the Parole in Place program on behalf of Ms. Andrade in September 2025, which remains pending. *Id*.; ECF No. 1-2; ECF No. 1-3, p. 4. Ms. Andrade is in a long-term relationship with U.S. citizen Marcelo Suarez Avendado; he is father to three of her children, and Ms. Andrade planned to marry him this year. ECF No. 1-3, p. 4. Several members of the community, including Ms. Andrade's former coworkers, one of her children's teachers, her neighbor, and her friends, have written letters of recommendation in support of Ms. Andrade's good moral character. ECF No. 1-3, pp. 23–34.

Ms. Andrade was arrested on or about August 4, 2026, and was detained at the Salt Lake County Jail. ECF No. 1, p. 2. Salt Lake County charged Ms. Andrade with aggravated assault on August 13, 2026. ECF No. 1-3, p. 36. She was transferred to the custody of the Bureau of Immigration and Customs Enforcement (ICE) on August 9, 2026. *Id*. at 1–2. On August 28, Respondents set a bond hearing for September 2 in Salt Lake County, Utah. The parties initially reported that, after entering ICE custody, Ms. Andrade was moved to Wyoming, then sent back to Utah, and then transferred to an ICE detention center in Eloy, Arizona on August 29, after which her previously scheduled bond hearing was cancelled. ECF No. 1, p. 3; ECF No. 7, p. 3.

Ms. Andrade filed her petition for a writ of habeas corpus in this court on August 28, 2026.[1] *See* ECF No. 1. On August 31, this court ordered Respondents to show cause why Ms. Andrade's petition should not be granted and directed that Ms. Andrade not be transferred outside a 100-mile radius of the Orrin G. Hatch United States Courthouse. ECF No. 4, p. 4. On September 1,

---

[1] The parties agree that Ms. Andrade was present in Utah when she filed her petition, and it appears that Respondents do not contest jurisdiction or venue. ECF No. 7, p. 3.

Respondents filed their response to this court's order to show cause. *See* ECF No. 7. They indicated that Ms. Andrade "remain[ed] at the Eloy Detention Center" and that they planned to reschedule her bond hearing "for another time in Eloy, Arizona," apparently disregarding this court's order that Ms. Andrade stay within 100 miles of the Orrin G. Hatch United States Courthouse. ECF No. 7, p. 3. Respondents further indicated that "[i]f ordered, the [bond] hearing could likely take place within seven days."[2] *Id*. at p. 2.

This court held a hearing on Ms. Andrade's petition on September 4, 2026, at which Ms. Andrade was present. During that hearing, Ms. Andrade's counsel represented that he had been unable to locate or communicate with Ms. Andrade since her transfer to ICE custody. Ms. Andrade's counsel apparently tried to locate her using ICE's online locator, but it provided no information on Ms. Andrade's whereabouts. Ms. Andrade's counsel explained that he had received no updates on her movements during her time in ICE custody; that the locator had not provided information about Ms. Andrade's location; and that ICE had repeatedly failed to answer phone calls seeking information.

During oral argument, counsel for both parties provided additional information about Ms. Andrade's whereabouts and status since ICE took her into custody on August 9. Ms. Andrade's counsel represented that Ms. Andrade reported being transferred not only to Wyoming and Arizona, but also to several other states, including Washington, California, and Texas. Ms. Andrade's counsel further represented that he did not immediately request a bond hearing because

---

[2] The Tenth Circuit's ruling in *Santillan Quiroz v. Mullin*, 180 F.4th 1226, 1249 (10th Cir. 2026) makes clear that non-citizens detained pursuant to 8 U.S.C. § 1226(a) are entitled to a bond hearing; it does not require detained non-citizens to file a petition for a writ of habeas corpus and obtain a court order directing ICE to schedule a bond hearing.

ICE initially led him to believe that Ms. Andrade would be released on her own recognizance. Counsel for both parties agreed that Ms. Andrade formally requested a bond hearing on August 28 and that Respondents scheduled a bond hearing for September 2. Counsel for Respondents explained that the September 2 bond hearing was cancelled because Respondents transferred Ms. Andrade to Arizona on August 29.

## LEGAL STANDARD

A writ of habeas corpus is "available to every individual detained within the United States." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. Const., Art. I, § 9, cl. 2). "[T]he essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973).

Under 28 U.S.C. § 2241, a district court has the authority to grant a writ of habeas corpus when the petitioner "is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). The Petitioner bears the burden of demonstrating that her custody is in violation of the law. *See Espinoza v. Sabol*, 558 F.3d 83, 89 (1st Cir. 2009) ("The burden of proof of showing deprivation of rights leading to unlawful detention [under § 2241] is on the petitioner.").

## DISCUSSION

### I. Ms. Andrade's Petition for a Writ of Habeas Corpus

Ms. Andrade has demonstrated that her continued custody violates her right to due process. It is "well established" that non-citizen detainees are entitled to "due process of law in deportation proceedings." *Reno v. Flores*, 507 U.S. 292, 306 (1993). The Supreme Court has outlined three factors that are relevant to determining whether a plaintiff's due process rights have been violated:

(1) "the private interest that will be affected by the official action"; (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards"; and (3) the government's interest, "including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976).

*A. Ms. Andrade's Liberty Interest*

Ms. Andrade has a substantial protected liberty interest at stake. "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that Clause protects." *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001). The Tenth Circuit, in a recent case involving an unadmitted non-citizen like Ms. Andrade, emphasized that "the Supreme Court has never said that due process protections fall away completely in the immigration context" and that "[d]ue process requires that, whenever the Government detains somebody, it must have a good reason for doing so." *Santillan Quiroz v. Mullin*, 180 F.4th 1226, 1249-50 (10th Cir. 2026).

*B. The Risk of an Erroneous Deprivation Due to the Procedures Employed by ICE*

The procedures used to detain Ms. Andrade are likely to result in the erroneous deprivation of Ms. Andrade's liberty. "Civil immigration detention must be 'nonpunitive in purpose' and bear a 'reasonable relation' to the authorized statutory purposes of preventing flight and danger to the community." *Rodriguez-Acurio v. Almodovar*, 811 F. Supp. 3d 274, 317 (E.D.N.Y. 2025), *appeal dismissed*, No. 26-219, 2026 WL 1208948 (2d Cir. Feb. 25, 2026). Here, Respondents 1) did not provide Ms. Andrade a bond hearing during a month-long detention; 2) when Ms. Andrade's hearing finally was scheduled, transferred Ms. Andrade to a facility far from that hearing, thereby causing it to be cancelled; and 3) seemingly denied Ms. Andrade the opportunity to consult with

her counsel. Taken together, these circumstances create a high risk of erroneous deprivations of liberty.

1) Ms. Andrade Was Entitled to a Timely Bond Hearing

Ms. Andrade's detention falls within the discretionary detention framework of 8 U.S.C. § 1226(a). Respondents concede that they cannot distinguish Ms. Andrade's case from the facts of *Santillan Quiroz*, where the Tenth Circuit found that non-citizens apprehended in the interior of the United States are subject to detention under § 1226(a). *Santillan Quiroz*, 180 F.4th at 1249; ECF No. 7, p. 5. Nor can Respondents distinguish Ms. Andrade's case from other cases in which this court found that § 1226(a) applied. *Id.*; *Lemus Cristales v. Arbon*, No. 2:2-CV-00217-JNP, 2026 WL 892874 (D. Utah Mar. 31, 2026); *Torres Medina v. Tjaden*, No. 2:26-CV-00195-JNP, 2026 WL 8000677 (D. Utah Mar. 23, 2026). As the Tenth Circuit explained, when the government seeks to detain a non-citizen pursuant to 8 U.S.C. § 1226, "the detention is civil and nonpunitive," so the government's reason for detaining the non-citizen "must rise to the level of a 'strong special justification.'" *Santillan Quiroz*, 180 F.4th at 1249. If a non-citizen is detained pursuant to § 1226 but is "neither a flight risk nor a danger to the community," the non-citizen "should be discretionarily released." *Id*. at 317.

Despite their uncontroverted obligation to provide Ms. Andrade a bond hearing, Respondents have not done so in the month since they took custody of Ms. Andrade. Indeed, Respondents did not attempt to schedule a bond hearing until Ms. Andrade's counsel requested one on August 28. And Respondents then stymied their own scheduled bond hearing by transferring Ms. Andrade to Arizona on August 29, making it impossible for her to attend the bond hearing they had scheduled for September 2 in Utah. These highly concerning circumstances are made all the more concerning by the representation by Ms. Andrade's counsel that ICE initially

indicated that Ms. Andrade would be released on her own recognizance, causing him to delay making a formal request for a bond hearing. This failure to provide a hearing clearly increased the risk that Ms. Andrade was subject to an erroneous deprivation of her liberty, as it deprived her of the opportunity to present evidence that she should be granted a bond.

2) Respondents Transferred Ms. Andrade to Arizona and Thereby Cancelled Her Bond Hearing

After Ms. Andrade filed her petition for a writ of habeas corpus and submitted her formal request for a bond hearing on August 28, Respondents scheduled a bond hearing in Utah for September 2. But Respondents then transferred Ms. Andrade to Arizona on August 29. ECF No. 7, p. 3. Respondents confirmed at oral argument that Ms. Andrade's hearing was cancelled because they transferred her out of Utah. Though Respondents informed this court that "[i]f ordered, the [bond] hearing could likely take place [in Arizona] within seven days," it appears that they have made no effort to schedule a new hearing. ECF No. 7, p. 2.

Counsel for Respondents emphasized at oral argument that various logistical problems impacted Respondents' decision to transfer Ms. Andrade to Arizona. But constitutional protections do not fall away in the face of logistical challenges. Though Ms. Andrade is subject only to civil detention, it is instructive to consider the procedural requirements for detention of a criminal defendant. Criminal defendants arrested without a pre-detention determination of the lawfulness of their arrest must be provided a hearing before a neutral magistrate within 48 hours. *County of Riverside v. McLaughlin*, 500 U.S. 44, 56 (1991). Though delays may be reasonable if there are "unavoidable delays in transporting arrested persons from one facility to another," Ms. Andrade's hearing was not cancelled because of unavoidable delays in transport—indeed, her transfer to Arizona appears to have made after Respondents scheduled a hearing in Utah and with the

knowledge that her transfer would make her scheduled hearing impossible. *Id*. at 56–57. Moreover, Ms. Andrade is not detained as a criminal defendant. She is subject to civil immigration proceedings, which are supposed to be "nonpunitive in purpose and effect." *Zadvydas*, 533 U.S. at 690. As noted above, without a bond hearing, Ms. Andrade has had no opportunity to show that she is entitled to a bond, greatly increasing the risk of an erroneous detention.

3) Ms. Andrade's Right to Counsel

During this court's September 4 hearing, Ms. Andrade's counsel represented that, since Ms. Andrade was taken into Respondents' custody, he has been unable to locate her and has received no information regarding her movements. As discussed above, Respondents acknowledged this court's order that Ms. Andrade not be transferred more than 100 miles from the Orrin G. Hatch United States Courthouse but nonetheless indicated their intention to keep Ms. Andrade in Arizona, outside the jurisdiction of this court and the Tenth Circuit. ECF No. 7, p. 3. And during the September 4 hearing, when Ms. Andrade finally had the chance to speak with her counsel, she informed him that Respondents had, in fact, transferred her to several other states during her month-long detention, including additional states outside of the Tenth Circuit.

Ms. Andrade could not inform her counsel of her movements prior to this court's hearing because, as Ms. Andrade's counsel represented to this court, he had no opportunity to confer with Ms. Andrade after her transfer to federal custody. Ms. Andrade's counsel explained that he has been unable to locate her using ICE's online locator, nor has he been able to reach ICE via telephone to inquire about her location. Without information about Ms. Andrade's whereabouts, or any way to obtain such information, he has not been able to confer with her to prepare for a bond hearing or to discuss the petition before this court.

The cancellation of Ms. Andrade's bond hearing, brought about by Respondent's decision to transfer her out of Utah, also interfered with Ms. Andrade's access to her counsel. Ms. Andrade's counsel represented at oral argument that he had prepared for and planned to attend the September 2 bond hearing to represent Ms. Andrade. He further stated that scheduling a new hearing in Arizona would require him to travel to Arizona on short notice, with no guarantee that ICE would not again transfer Ms. Andrade and cancel the hearing.

In addition to having a statutory right to counsel in removal proceedings before an immigration judge, non-citizen detainees are entitled to "due process of law in deportation proceedings." *Reno v. Flores*, 507 U.S. 292, 306 (1993); 8 U.S.C. § 1362. Courts in this district have found that "detained persons, whether citizens or noncitizens, have due process rights and the right of access to counsel." *Reyes v. United States Immigr. & Custom Enf't*, No. 2:25-CV-01159, 2026 WL 266952, at *1 (D. Utah Feb. 2, 2026). Preventing Ms. Andrade from conferring with her counsel so that he could effectively represent her and rescheduling her bond hearing so that Ms. Andrade's counsel could not reasonably prepare for and attend it clearly increases the risk of an erroneous detention.

*C. The Government's Interest*

Providing Ms. Andrade with a pre-deprivation hearing would not have imposed a costly burden on the government or unduly interfered with the government's interests in protecting the public or enforcing immigration law. Ms. Andrade was always entitled to a custody redetermination hearing under § 1226(a); requiring that hearing to take place before Ms. Andrade was detained would not have increased administrative costs. *Singh v. Andrews*, 803 F. Supp. 3d 1035, 1048 (E.D. Cal. 2025) ("In immigration court, custody hearings are routine and impose a 'minimal' cost."). "Indeed, a pre-deprivation hearing could reduce administrative costs by

potentially avoiding an erroneous deprivation of liberty, which would save the costs of unnecessary detention." *Guillermo M. R. v. Kaiser*, 791 F. Supp. 3d 1021, 1037 (N.D. Cal. 2025). At bottom, "[i]f the government wishes to re-arrest [Ms. Andrade] at any point, it has the power to take steps toward doing so; but its interest in doing so without a hearing is low." *Ortega v. Bonnar*, 415 F. Supp. 3d 963, 970 (N.D. Cal. 2019). A pre-deprivation hearing is warranted.

Returning to the *Mathews* factors, the court finds that Ms. Andrade's due process rights have been violated. Ms. Andrade's liberty interest is substantial. The procedures employed by ICE create a significant risk of erroneous detention: ICE transferred Ms. Andrade to detention facilities far from her scheduled bond hearing, cancelled the hearing, and failed to provide any information about her whereabouts to her counsel, causing Ms. Andrade to be detained for nearly a month without any hearing or opportunity to confer with her counsel. Though the government has an interest in protecting the public and enforcing immigration law, a pre-detention hearing would not have unduly burdened that interest.

The court thus orders that Respondents release Ms. Andrade, and if they seek to re-detain her, they must provide her with notice and a pre-deprivation hearing, in which the government bears the burden of establishing by clear and convincing evidence that Ms. Andrade is a flight risk or danger to the community.

## II. Ms. Andrade's Requests for Injunctive and Declaratory Relief

Ms. Andrade also seeks injunctive and declaratory relief. Specifically, Ms. Andrade seeks an order directing Respondents not to transfer her out of this court's jurisdiction during these proceedings and a declaration that Ms. Andrade's detention violates her Fifth Amendment rights. ECF No. 1, pp. 19–20. Ms. Andrade's first request has been rendered moot by this court's order

that Respondents not transfer Ms. Andrade more than 100 miles from the Orrin G. Hatch United States Courthouse. ECF No. 4, p. 4; ECF No. 7, p. 3. That order is still in effect.

And the court declines Ms. Andrade's request for declaratory relief. The Tenth Circuit directs courts to consider the following factors when deciding actions for declaratory relief:

> [1] whether a declaratory action would settle the controversy; [2] whether it would serve a useful purpose in clarifying the legal relations at issue; [3] whether the declaratory remedy is being used merely for the purpose of "procedural fencing" or "to provide an arena for a race to res judicata "; [4] whether use of a declaratory action would increase friction between our federal and state courts and improperly encroach upon state jurisdiction; and [5] whether there is an alternative remedy which is better or more effective.

*State Farm Fire & Cas. Co. v. Mhoon*, 31 F.3d 979, 983 (10th Cir. 1994). Here, declaratory relief alone would not settle the controversy and, as discussed above, the legal issues regarding detention under § 1226(a) have already been addressed by the Tenth Circuit. Though this case does not implicate concerns of procedural fencing and does not seem likely to increase friction between state and federal courts, ordering Ms. Andrade's release pursuant to the conditions specified herein provides sufficient remedy.

Finally, Ms. Andrade asks this court to award her costs and reasonable attorneys' fees. ECF No. 1, p. 20. Given this court's ruling in favor of Ms. Andrade today, the court finds that attorney's fees are warranted. *See Daley v. Ceja*, 158 F.4th 1152, 1162 (10th Cir. 2025) (holding that "habeas actions challenging immigration detention are unambiguously 'civil actions'" and that "[t]he EAJA authorizes the award of attorneys' fees to petitioners who prevail against the Government in such actions"). The court invites Ms. Andrade's counsel to submit a petition for attorney's fees, including a fee affidavit.

## CONCLUSION AND ORDER

For the foregoing reasons, the court ORDERS as follows:

1. Ms. Andrade's petition for a writ of habeas corpus is GRANTED. Her requests for injunctive and declaratory relief are DENIED. ECF No. 1, pp. 19–20.
2. Respondents are ORDERED to either immediately release Ms. Andrade or to release Ms. Andrade in Salt Lake City as soon as practical and without undue delay, based on Ms. Andrade's preference. If applicable, Respondents must provide a status report within 48 hours detailing the release plan and any associated timeline. Respondents must also provide a status report informing the court of Ms. Andrade's release within 24 hours of the release.
3. Respondents are ORDERED, at the time of release, to provide Ms. Andrade any personal effects and identification documents that were confiscated from her.
4. Respondents are ENJOINED from imposing further restraints on liberty (e.g., electronic monitoring) that were not imposed on Ms. Andrade prior to her 2026 ICE detention, unless those restraints are determined to be necessary at a future pre-deprivation or custody hearing. Ms. Andrade must be released to the same legal status and conditions she enjoyed prior to her detention.
5. If Respondents seek to re-detain Ms. Andrade, absent exigent circumstances, they must provide Ms. Andrade notice of at least seven days before a pre-deprivation hearing before an immigration judge in which the government bears the burden of establishing by clear and convincing evidence that Ms. Andrade is a flight risk or danger to the community. Respondents are ENJOINED from re-detaining Ms. Andrade on the basis that she is subject to detention under 8 U.S.C. § 1225(b)(2).

DATED September 8, 2026.

BY THE COURT

Jill N. Parrish
Chief United States District Court Judge
District of Utah